NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDDY M. MOREAU, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WALGREENS, )<br>)<br>Defendant. )<br>) | Civil Action No.: 06-3347<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court on the Motion for Summary Judgment [CM/ECF #59] filed by Defendant Walgreen Eastern Co. ("Defendant" or "Walgreen") on October 14, 2008. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein, Defendant's motion is granted.

**INTRODUCTION**

After going through the submissions of the parties, the Court concludes that the uncontested facts are as follows. Plaintiff Eddy M. Moreau ("Plaintiff" or "Moreau") entered a Walgreen location in Belleville, New Jersey, carrying a duffel bag and pushing a shopping cart. (Mendez Dec. ¶ 3.) Upon Moreau leaving the store without making a purchase, with the duffel bag at least partially full, Walgreen employee Seufus Mendez ("Mendez") noticed Plaintiff and his duffel bag and suspected 1) that Plaintiff was engaged in a scheme to obtain refunds for merchandise he had not purchased and 2) that Plaintiff's duffel bag contained unpurchased

Walgreen merchandise.  (Id. ¶¶ 4-6; Koshnick Statement at 1.)  Mendez then called the police, and spoke to Officer Graham Koshnick ("Koshnick").  (Mendez Dec. ¶ 7; Koshnick Statement at 1.)  Mendez described Plaintiff to Koshnick; Koshnick's subsequent broadcast of the description resulted in Plaintiff's recognition by Lieutenant Vincent Celfo ("Celfo").  (Koshnick Statement at 1; Celfo Statement at 1.)  After Celfo called out to Plaintiff, saying "stop, don't run," Plaintiff stopped, and Celfo explained that he matched the description of someone who had just left a Walgreen location.  (Celfo Statement at 1; Pl. Opp. Br. at 8.)  Celfo asked if Plaintiff had a problem at the Walgreen location; Plaintiff stated that he had, indeed, had a problem, but did not elaborate on it to Celfo.  (Celfo Statement at 1-2.)  Celfo then reported in, Koshnick brought Mendez to Plaintiff, and Mendez identified Plaintiff as the suspected shoplifter.  (Mendez Dec. ¶¶ 9-10; Koshnick Statement at 1-3; Celfo Statement at 2.)

After the show-up identification by Mendez, Plaintiff was arrested, given a court date of June 14, 2006, and released.  (Def. Br. at 5.)  On June 27, 2006, Mendez agreed to the municipal prosecutor's request to drop the charges, and the municipal prosecutor requested of the presiding judge that the charges be dropped due to a failure of proof.  ((Mendez Dec. ¶ 13; Pl. Opp. Br. at 9.)  The charges were then dismissed, subject to certain conditions not relevant to the instant motion.  (Mendez Dec. ¶ 14.)

Plaintiff has a history of schizophrenia and depression, and has received treatment for his mental illnesses from at least four facilities since 1995.  (Pl. Opp. Br. at 7; Moreau Dep. Tr. at 40.)  Plaintiff's treatment included medications, but he ceased taking his medication of his own accord in 2005.  (Moreau Dep. Tr. at 40-41.)  He resumed his medications after his arrest.  (Moreau Dep. Tr. at 40.)  His 2006 medical records note Plaintiff's arrest, but quote his "chief

complaint" as follows: "I hadn't been to the doctor in over a year, and I was regressing." (Washington Dec. Ex. G at 2.)

## DISCUSSION

On September 12, 2006, after paying his filing fee, Plaintiff's Complaint was filed in this Court. He amended his Complaint on January 18, 2007, and after discovery, Defendant moved for summary judgment on October 14, 2008.

Plaintiff's Amended Complaint seeks his health care costs plus $25,000,000 from Defendant based on several causes of action: aggravating a preexisting mental illness, slander, and infliction of emotional distress. (Am. Compl., passim.) Defendants moved for summary judgment on several bases: immunity under N.J.S.A. § 2C:20-11, the special interest privilege, Plaintiff's failure to present evidence on his medical condition, and that no material issues of fact exist to prevent summary judgment.

### A.    Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**B.     Immunity Under the New Jersey Shoplifting Statute**

Defendant argues that New Jersey's shoplifting statute, N.J.S.A. § 2C:20-11, renders it immune from civil liability in the instant matter.  (Def. Br. at 8-9.)  Plaintiff attempts to counter Defendant's assertion of immunity by denying that he was shoplifting and maintaining that Defendant did not have probable cause.  (Pl. Opp. Br. at 5-6.)

In relevant part, N.J.S.A. § 2C:20-11 makes it a crime:

> For any person purposely to take possession of, carry away, transfer or cause to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise or converting the same to the use of such person without paying to the merchant the full retail value thereof.

N.J.S.A. § 2C:20-11(b)(1). The statute goes on to provide civil immunity for merchants if certain conditions have been met:

> A merchant who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has

>   probable cause for believing that the person arrested committed the offense of shoplifting.

N.J.S.A. § 2C:20-11(e).  Defendant argues that it had probable cause to believe Plaintiff had shoplifted, based upon his leaving the Walgreen store with a partially full duffel bag, and that it thus deserves immunity under the statute.  (Def. Reply Br. at 4.)

This Court finds that material issues of fact preclude finding summary judgment for Defendant based on N.J.S.A. § 2C:20-11(e).  In the shoplifting civil immunity context under New Jersey law, "the issue of probable cause is for the jury where the facts are in dispute." Liptak v. Rite Aid, Inc., 673 A.2d 309, 317 (N.J. Super. Ct. App. Div. 1996).  Here, Plaintiff disputes basically all of Mendez's allegations, the only fact that seem to be uncontested is that Plaintiff arrived at the Walgreen location with a duffel bag.  Whether the bag was partially full or full when plaintiff left the Walgreen store seems to be contested as well.  Plaintiff states, "I do not think my bag appeared full and . . . I never objected to Mendez looking in my bag." Therefore, based on these disputed facts that go directly to the issue of probable cause, it cannot be said that probable cause existed as a matter of law.  Summary judgment is, therefore, denied as to immunity under N.J.S.A. § 2C:20-11(e).  Liptak, 673 A.2d at 317.

**C.     The Special Interest Privilege**

Defendant also argues that as to the defamation claim, it is entitled to summary judgment based on the special interest privilege.  (Def. Br. at 9-11.)  In defamation actions, New Jersey recognizes a defense through the special interest privilege.  Govito v. West Jersey Health Sys., Inc., 753 A.2d 716, 724 (N.J. Super. Ct. App. Div. 2000).  It permits private citizens to communicate certain reasonable private concerns to a limited audience with similar concerns.

Govito, 753 A.2d at 724. "The critical elements of this test are [1] the appropriateness of the occasion on which the defamatory information is published, [2] the legitimacy of the interest thereby sought to be protected or promoted, and [3] the pertinence of the receipt of that information by the recipient." Bainhauer v. Manoukian, 520 A.2d 1154, 1170 (N.J. Super. Ct. App. Div. 1987) (numbering added). The privilege can be defeated by a showing that the statement was made with actual malice. Dijkstra v. Westerink, 401 A.2d 1118, 1121 (N.J. Super. Ct. App. Div. 1979).

Assuming arguendo that Mendez's call to the police was defamatory, it is well within the scope of the special interest privilege based on the facts as Mendez believed then to exist. The Supreme Court of New Jersey has noted its applicability in the reporting of crime: "citizens have a qualified privilege to make statements to authorities for the prevention and detection of crime." Dairy Stores, Inc. v. Sentinel Publ'g Co., Inc., 516 A.2d 220, 226 (N.J. 1986.) Here, Plaintiff does not dispute Mendez's belief that the duffel bag looked partially full when Plaintiff left the store. All that Plaintiff asserts is that he (Plaintiff) did not "think that my bag appeared half full." Regardless of what Plaintiff may have thought about the appearance of the bag, Mendez clearly believed that Moreau had concealed Walgreen merchandise in his duffel bag without paying for those items, and called the police after Moreau exited the store. (Mendez Cert. ¶¶ 6-7.) This was an appropriate occasion to make a communication. It is also established that prevention of shoplifting is a legitimate interest, N.J.S.A. § 2C:20-11, and Mendez was attempting to promote that interest with his call. (Mendez Cert. ¶¶ 6-7, 10.) Finally, the information was quite pertinent to the recipient: the police are the proper authorities to contact when reporting criminal acts. Dairy Stores, Inc., 516 A.2d at 226. Defendant has, therefore, established that the special interest

privilege applies under these circumstances.

Plaintiff has not brought forward any evidence that would support a finding of actual malice that would defeat the special interest privilege. Actual malice requires knowledge of a statement's falsity by the speaker, or a showing that it was made with reckless disregard as to whether it was false or not. Govito, 753 A.2d at 723. On the instant motion, Moreau denies much of what Mendez told the police, but he does not come forward with any evidence that would support a finding that Mendez knew his statements were false or that he uttered them without regard to their falsity. (Pl. Opp. Br. at 1-2, 6.) Defendant, on the other hand, provided a certification from Mendez in which he asserts what he believed were the facts and what he reported to the police: thus the Court is presented not with an issue of credibility concerning Mendez's statements to the police, but a record devoid of any evidence that can demonstrate actual malice. Dijkstra, 401 A.2d at 1121. This Court, therefore, grants Defendant's motion for summary judgment as to Plaintiff's defamation claim based on the special interest privilege.

**D.     Emotional Harm and Aggravation of Preexisting Mental Illness**

Defendant argues that Plaintiff has not met his burden on his remaining claims because he does not present any evidence that his preexisting mental illnesses or emotional condition were affected by his arrest. (Def. Br. at 11-14.) Plaintiff, on the other hand, asserts that he can obtain records which would demonstrate his aggravated mental illness, and that he will present evidence at trial in support of his claim. (Pl. Opp. Br. at 6-7, 9.) However, in fact the only records before this Court were the medical records of the Plaintiff provided by the Defendant. The records fail to set forth any expert opinion or medical evidence of an aggravation of the Plaintiff's underlying mental condition as it was prior to the incident in question or relate any of Plaintiff's mental

issues to Defendant's conduct.

To the extent that Plaintiff's claim can be construed as a claim for negligent infliction of emotional distress, such claim would also fail. The tort of negligent infliction of emotional distress requires a showing that the distress suffered is "truly genuine and substantial," and must amount to more than minor symptoms such as embarrassment or an unknown number of headaches. Decker v. Princeton Packet, Inc., 561 A.2d 1122, 1128 (N.J. 1989). To succeed in an action for intentional infliction of emotional distress, "the emotional distress . . . must be 'so severe that no reasonable [person] could be expected to endure it.'" Tarr v. Ciasulli, 853 A.2d 921, 924 (N.J. 2004) (quoting Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988)). No such evidence has been offered here. The only information proffered by Moreau in support of his emotional distress claim is what he alleges in his Amended Complaint, where he states that he suffered embarrassment, humiliation, anger, anxiety, and lack of sleep. (Am. Compl. at 2.) These are mere allegations which at this juncture need to be supported by medical records or other evidence before this Court. The emotional distress indicated in the medical records subsequent to the incident at Walgreen's does not evidence any relation to Defendant's conduct or the type of emotional distress that can support relief under New Jersey law. Therefore, there being no other evidence to support Plaintiff's claim, Defendant's motion for summary judgment is granted with respect to Plaintiff's infliction of emotional distress claim.

With respect to Moreau's claim of an aggravation of a preexisting mental illness, New Jersey law requires him to present evidence sufficient to determine the impact of tortious conduct upon his condition:

> In the normal prior or post-personal injury aggravation claim, the

> party in the best position to present evidence of non-aggravation or exacerbation is plaintiff. Plaintiffs should understand and appreciate whether and how a defendant's tort may have affected their prior or post injuries or conditions. The effect on plaintiff of defendant's tort is uniquely within plaintiff's knowledge. Thus, in a routine personal injury aggravation claim, we do not shift the burden to defendants and to prevail, plaintiffs must separate those damages caused by a particular defendant's negligence from any prior or post injuries or conditions.

O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of America, 825 A.2d 524, 530 (N.J. Super. Ct. App. Div. 2003).  Plaintiff has failed to meet this burden.  Plaintiff maintains he can support his claim with medical records, however, the only medical records before this Court do not support a claim of aggravation or in any way separate the Plaintiff's damages alleged to be caused by Defendant's negligence from those attributable to his preexisting mental illness.  See Ridgewood Bd. of Educ., 172 F.3d at 252.  As previously stated Defendants have supplied the Court some of Plaintiff's medical records.  Defendant also provided the Court with a partial deposition transcript describing Plaintiff's medical condition in his own words.  Plaintiff, on the other hand, has supplied no evidence to this Court which sets forth what aggravation his mental condition suffered, other than his claim that he resumed treatment subsequent to his arrest.  (Moreau Dep. Tr. at 40.)  Even examining the evidence that has been provided in the light most favorable to Plaintiff, he has failed to provide any credible medical evidence that would support his claim of aggravation.  Therefore, this Court grants summary judgment to Defendants on Plaintiff's claim for aggravation of a preexisting mental illness.

## CONCLUSION

For the reasons set forth above and pursuant to the Order accompanying this Opinion, this

Court grants Defendant's motion for summary judgment.


DATED: March 20, 2008                              /s/ Jose L. Linares
                                                   United States District Judge